UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
_____

In re:

AHLAN INDUSTRIES, INC., et al.,

     Debtors.

_____/

Case No. BG 18-04650
Chapter 7

GRAND RAPIDS E CIGARETTE, LLC,

     Plaintiff,

v.

MITTEN PIZZA, LLC &
AHLAN INDUSTRIES, INC.,

     Defendants.

_____/

Adversary Proceeding
No. 20-80136

In re:

ANTHONY AHLAN WINTERS,

     Debtor.

_____/

Case No. BK 18-04655
Chapter 13

GRAND RAPIDS E CIGARETTE, LLC,

     Plaintiff,

v.

ANTHONY WINTERS &
MITTEN PIZZA, LLC,

     Defendants.

_____/

Adversary Proceeding
No. 20-80137

1

In re:

JAMIE AHLAN ZICHTERMAN,

     Debtor.

_____/

GRAND RAPIDS E CIGARETTE, LLC,

     Plaintiff,

v.

JAMIE ZICHTERMAN &
MITTEN PIZZA, LLC,

     Defendants.

_____/

Case No. BG 18-04656
Chapter 13


Adversary Proceeding
No. 20-80138

### OPINION REGARDING DEFENDANTS' MOTIONS TO DISMISS AND FOR SANCTIONS

<u>Appearances:</u>

April A. Hulst, Grand Rapids, Michigan, attorney for Mitten Pizza, LLC, Anthony Winters, and Jamie Zichterman.

Joseph M. Infante and Michael E. Moore, Grand Rapids, Michigan, attorneys for Grand Rapids E Cigarette, LLC.


I.       <u>INTRODUCTION AND JURISDICTION.</u>

In the motions to dismiss that are currently before the court, Defendants Anthony Winters, Jamie Zichterman, and Mitten Pizza, LLC (collectively, the "Movants"), seek dismissal of three separate adversary proceedings brought against them by Plaintiff Grand Rapids E Cigarette, LLC ("GRE").[1]  GRE is a creditor of Winters, Zichterman, and

---

[1]     The three adversary proceedings, GRE v. Mitten Pizza, LLC and Ahlan Industries (AP No. 20-80136), GRE v. Winters and Mitten Pizza, LLC (AP No. 20-80137) and GRE v. Zichterman and Mitten Pizza, LLC (AP No. 20-80138) are sometimes referred to collectively herein as the "Mitten Pizza adversaries."

several of their related corporate entities including Ahlan Industries, Inc., under a prepetition state court judgment. GRE also previously purchased all the assets of Ahlan Industries under a sale order entered by this court in the Ahlan chapter 7 case. GRE's current adversary complaints allege that the Ahlan assets included an ownership interest in a pizzeria located in Middleville, Michigan (the "Pizzeria"), which is now known as Mitten Pizza, LLC. In its complaint against Mitten Pizza and Ahlan, GRE asks for a declaratory judgment that the Pizzeria was an asset of the Ahlan bankruptcy estate and was included in the prior sale order. Alternatively, all three complaints seek a determination that the Pizzeria assets were fraudulently conveyed or converted by Winters, Zichterman, and/or Mitten Pizza at or around the time the bankruptcy cases were filed. The Movants have sought dismissal of the fraudulent conveyance, conversion, and conspiracy counts in the GRE complaints for lack of standing and failure to state a claim upon which relief can be granted.

The court has jurisdiction over the Ahlan chapter 7 base cases and the chapter 13 cases of Winters and Zichterman. 28 U.S.C. § 1334. The cases, and all related proceedings and contested matters, have been referred to this bankruptcy court for determination. 28 U.S.C. § 157(a); LGenR 3.1(a) (W.D. Mich.). Although this court's subject matter jurisdiction over the causes of action alleged in the Mitten Pizza adversaries, particularly as it relates to GRE's standing to bring the claims, is the central issue raised in the current motions to dismiss, this court has jurisdiction to determine its own jurisdiction over the claims. *See, e.g., United States v. Ruiz*, 536 U.S. 622, 628, 122 S. Ct. 2450 (2002) ("a federal court always has jurisdiction to determine its own jurisdiction").

3

## II.   BACKGROUND AND PROCEDURAL HISTORY.[2]

A.   *General Background*.

Ahlan Industries, Inc., Mitten Vapors, LLC, Peninsula Vapors, LLC, and GR E Liquid, LLC (collectively, the "Corporate Debtors"), are related entities that filed chapter 7 petitions in this court on November 5, 2018.[3]  The individuals who owned and managed the Corporate Debtors, Jamie Zichterman and Anthony Winters (the "Individuals"), also filed chapter 13 cases in this court on November 5, 2018.  GRE is a creditor in the corporate chapter 7 cases and the individual chapter 13 cases, based on a prepetition judgment it obtained against the Corporate Debtors and the Individuals in the Kent County Circuit Court.  GRE has filed proofs of claim relating to the judgment debt in each of the base cases.  The most recent amendments to the claims indicate that GRE was owed more than $640,000 under the judgment as of the petition dates.  (*See, e.g.*, Case No. 18-04650, Amended Claim #2, filed on July 8, 2020.)  GRE is currently pursuing separate adversary proceedings against the Individuals, alleging that the judgment debt should be excepted from discharge in their respective chapter 13 cases as a debt for fraud under 11 U.S.C. § 523(a)(2)(A).

Pursuant to an order entered in the Ahlan base case on May 13, 2019 (the "Sale Order"), GRE also purchased all of the assets of the Ahlan and Mitten Vapors bankruptcy

---

[2]    This portion of the court's opinion is based on the record in these bankruptcy cases and adversary proceedings, as well as the factual allegations in the adversary complaints, which the court is required to accept as true for purposes of these motions to dismiss.

[3]    The chapter 7 cases filed by the Corporate Debtors were consolidated for administrative purposes only by orders entered on December 21, 2018.  (*See* Case No. 18-04650, Dkt. No. 35.) Pursuant to the orders, all subsequent pleadings have been filed in the Ahlan base case. Unless otherwise noted, references in this opinion to the Ahlan base case are to the jointly administered corporate cases.

estates for $25,000.  (*See* Case No. 18-04650, Dkt. No. 71.)  The Sale Order provided

that the assets were being sold on an "as is, where is" basis.  (*Id*. at ¶ 5.)  It also

specifically excluded certain property by providing:

> Excluded from the sale is certain property described in the Asset Purchase Agreement, including, but not limited to cash, money currently held in the Trustee's fiduciary accounts, security deposits, Ahlan's interest in a certain vehicle lease, any claims the bankruptcy estates may have related to the fraudulent transfer of the assets of Mitten [Vapors] or Ahlan, and any causes of action against the bankruptcy estates other than claims arising out of the Asset Purchase Agreement.

(*Id*. at ¶ 9.)

Since entry of the Sale Order, Thomas A. Bruinsma, the chapter 7 trustee in the

Ahlan Industries base case (the "Ahlan Trustee"), has pursued certain chapter 5

avoidance actions on behalf of the bankruptcy estate.  In particular, on November 23,

2020, the Trustee filed a motion for approval of a modified settlement agreement with

Mitten Pizza, LLC.  (Case No. 18-04650, Dkt. No. 186.)  The settlement resolved the

Trustee's claims that Mitten Pizza had received certain postpetition cash transfers from

the Ahlan estate that were avoidable under 11 U.S.C. § 549.[4]  The court entered an order

approving the settlement on February 26, 2021.  (Case No. 18-04650, Dkt. No. 195.)

B.   *The Current Adversary Complaints*.

GRE initiated the three Mitten Pizza adversaries on November 2, 2020.  The

amended complaints in each adversary proceeding allege essentially the same facts.

---

[4]      The original settlement agreement between the Trustee and Mitten Pizza provided that it resolved "all avoidance claims Trustee may have against Mitten Pizza" and "that Mitten Pizza and its owner, Jamie Zichterman, shall be released and discharged from any further liability to the Trustee for any claims Trustee may have for avoidance claims under 11 U.S.C. § 544 *et seq*." (*See* Case No. 18-04650, Dkt. No. 176-1.)  This broad language drew an objection from GRE and was not included in the modified settlement agreement, which resolves only the Trustee's postpetition transfer claims.

According to GRE, the Pizzeria began operations in July 2016 and Ahlan Industries provided the funds to start the business.  (AP No. 20-80136, Dkt. No. 4, ¶ 13 & 16.)  At that time, and at all relevant times until the filing of the bankruptcy petitions, Ahlan essentially owned and operated the Pizzeria:  it paid all of the Pizzeria's expenses, including rent and food and beverage costs; employed the individuals who worked for the Pizzeria; maintained insurance on the Pizzeria; and deposited all sales proceeds from the Pizzeria into its own bank account. (*Id*. at ¶¶ 14-22.)

GRE further asserts that the Articles of Organization for Mitten Pizza, LLC were filed on April 21, 2017, which was nearly a year after the Pizzeria began operations. (*Id*. at ¶ 59.)  Mitten Pizza, LLC did not have its own bank account until July of 2018, and even after that point, the account had little activity.  (*Id*. at ¶¶ 60-62.)  In summary, GRE alleges that it was not until after the bankruptcy petitions were filed that Mitten Pizza began operating the Pizzeria "independent and separately" from Ahlan.  (*Id*. at ¶ 63.)  According to GRE, Winters, Zichterman, Mitten Pizza and Ahlan effectuated this change without purchasing the Pizzeria assets or taking other formal action to transfer ownership of the business.  (*Id*. at ¶ 64-67.)

Based on these factual allegations, the GRE adversary complaints assert several causes action, which fall into two broad categories.  The first category is alleged only in the complaint against Mitten Pizza and Ahlan and presumes that the Pizzeria assets were property of the Ahlan bankruptcy estate and were included in the sale to GRE.  The sole count in this category requests that this court enter a declaratory judgment stating that the Pizzeria assets were among the assets purchased by GRE under the Sale Order.

(AP No. 20-80136, Dkt. No. 4, Count I.).  The declaratory judgment count asks the court to direct Mitten Pizza and Ahlan to turn over the Pizzeria assets to GRE.

The second category of claims is based on the alternative premise that the Pizzeria assets were not purchased by GRE because the assets were transferred from Ahlan to Mitten Pizza "at or around the Petition Date." (*See, e.g.*, *Id*. at ¶ 83).  These claims are asserted in all three of the Mitten Pizza adversary proceedings and are collectively referred to herein as the "Pre-Sale Transfer Claims."  To the extent such a transfer occurred, the amended complaints against Mitten, Ahlan, and the Individuals ask this court to avoid the transfer of the Pizzeria assets as a fraudulent conveyance under the Michigan Uniform Fraudulent Transfer Act (the "UFTA"), Mich. Comp. Laws § 566.34 *et seq*. (AP No. 20-80136, Dkt. No. 4, Counts II and III), order that the transfer of the assets constituted statutory conversion under the Michigan conversion statute, Mich. Comp. Laws § 600.2919a (*Id*., Counts V and VI),[5] or find that the Defendants conspired to commit either action (*Id.*, Counts IV and VII).[6]  These counts of the complaints seek return of the Pizzeria assets either to the bankruptcy estate or to GRE, as purchaser of the estate's assets.  In the alternative, GRE requests entry of a money judgment in its favor for the

---

[5]      The amended complaints plead separate statutory conversion counts for "assets purchased by GRE" and for "assets subject to creditor claims."  The court notes, however, that there are no facts alleged in the complaints that would plausibly support a claim that the Pizzeria assets were converted after entry of the Sale Order.  Accordingly, the court has not interpreted GRE's claim as relating to a post-sale conversion of the assets, which would require a different jurisdictional analysis.  *See infra* note 9.

[6]      The court notes that under Michigan law, a claim for civil conspiracy is not a stand-alone cause of action, but rather requires the existence of a "separate, actionable tort." *See Qualite Sports Lighting, LLC v. Ortega*, 2019 WL 7582823, *9 (W.D. Mich. Sept. 10, 2019) ("If the plaintiff cannot show that a wrongful act entitles it to damages, then it cannot demonstrate civil conspiracy because a civil conspiracy is not itself a cause of action.") (citing *Roche v. Blair*, 9 N.W.2d 861, 863-64 (Mich. 1943)) (additional citations omitted).  For this reason, the court has focused its analysis on the fraudulent transfer and conversion claims asserted by GRE and has not considered the conspiracy claims as entirely separate causes of action.

value of the Pizzeria assets, which it estimates to be approximately $275,000, treble damages under the Michigan conversion statute, and various attorney's fees and costs.

On March 10, 2021, the Movants filed motions to dismiss in each of the three adversary proceedings.   The motions, which were filed pursuant to Fed. R. Civ. P. 12(b)(1) and (6), primarily assert that GRE lacks standing to pursue the Pre-Sale Transfer Claims against Mitten Pizza, Winters, and Zichterman.   The Movants argue that those claims are property of the Ahlan bankruptcy estate and may only be pursued by the Ahlan Trustee.

In addition, Winters and Zichterman each filed a Motion for Sanctions against GRE contemporaneously with their motions to dismiss.   In the sanctions motions, which were filed under Fed. R. Bankr. P. 9011, and the accompanying briefs, the Individuals allege that GRE failed to make a "reasonable inquiry into their claims to determine whether they were warranted by existing law or by a nonfrivolous argument" prior to filing their adversary complaints.   (*See, e.g.*, AP No. 20-80137, Dkt. No. 16-1, at p. 2.)   Instead, the Individuals assert that "in the heat of concurrent and contentious litigation between the parties," GRE filed its complaints "in an obvious effort to harass Zichterman and Winters and to drive up their legal fees."   (*Id*.)   The sanctions motions state that the Individuals first gave GRE notice of their intent to file the motions, as well as copies of the motions and the supporting brief, on November 18, 2020.   The motions were filed after GRE failed to withdraw its amended complaints.

   C. *Base Case Developments After the Filing of the Adversary Complaints*.

On December 31, 2020, nearly two months after the Mitten Pizza adversary complaints were filed, GRE filed a motion for relief from stay in each of the Individual's

8

chapter 13 cases.  (Case No. 18-04655, Dkt. No. 79; Case No. 18-04656, Dkt. No. 90.)  The purpose of the motions was to obtain this court's approval to pursue the claims asserted by GRE in the Mitten Pizza adversaries against the Individuals, which were filed in each of their respective chapter 13 cases.  Both of the Individuals objected to the motions.  These motions are currently under advisement and will be addressed by the court in separate orders in the Individual base cases.

It is also significant for purposes of the present motions to dismiss that the Ahlan Trustee has not abandoned any of the Ahlan estate's causes of action; they remain property of the estate.  He has also not sought leave of court to give GRE, or any other party-in-interest, derivative standing to pursue any such causes of action on behalf of the estate.  On March 12, 2021, the Ahlan Trustee did, however, file a Motion for Approval to Tender LLC Interests to GRE.  (Case No. 18-04650, Dkt. No. 197.)  The motion states that GRE "has asserted that the estate of Ahlan may still be the owner of assets owned by one Mitten Pizza, LLC and/or is the owner of Mitten Pizza, LLC."  (*Id.* at ¶ 4.)  To resolve that dispute, the motion seeks to tender, assign, and quit claim "any and all interest of the estate in Mitten Pizza, LLC and/or the assets of Mitten Pizza, LLC to Grand Rapids E Cigarette."  (*Id*. at ¶ 5.)  The motion is currently set for hearing, and the court has not yet entered an order granting or denying the motion.

D.  *Oral Argument on the Pending Motions*.

Oral argument on the motions to dismiss, the motions for sanctions, and the motions for relief from stay was held before this court on April 20, 2021.  During oral argument, counsel for the Movants confirmed that they do not assert that the declaratory judgment count in the adversary proceeding against Mitten Pizza and Ahlan is improper.

(*See* Transcript of Hearings Held on April 20, 2021, AP No. 20-80136, Dkt. No. 10, at 33-34.)  As a result, this Opinion does not address that count and will not result in dismissal of that claim in the adversary proceeding against Mitten Pizza and Ahlan.  The court reiterates that the adversary complaints against the Individuals do not include a similar declaratory judgment count.

At the conclusion of the hearings, the court took all of the motions under advisement.

### III.    DISCUSSION.

A.    *The Motions to Dismiss*.

The primary issue raised by Mitten Pizza and the Individuals in their motions to dismiss is whether GRE has standing to bring the Pre-Sale Transfer Claims for fraudulent transfer, conversion, and conspiracy in the three Mitten Pizza adversaries.  The Movants assert that the clear answer to that question is "no," arguing instead that those causes of action belong to the chapter 7 estate of Ahlan Industries, Inc. and may only be pursued by the Ahlan Trustee.

1.    *Legal Standard*.

Before addressing the substance of the Movants' arguments, the court must consider the appropriate legal standard under which the motions should be analyzed.  In their motions to dismiss, the Movants cite both Fed. R. Civ. P. 12(b)(1), which governs dismissal for lack of subject matter jurisdiction, including some types of standing, and Fed. R. Civ. P. 12(b)(6),[7] which applies to dismissal for "failure to state a claim upon which

___

[7]    Rule 12(b) is made applicable to these adversary proceedings by Fed. R. Bankr. P. 7012(b).

relief can be granted."   They do not, however, provide any greater specificity as to which rule they are relying upon in seeking dismissal of GRE's claims.   Although the legal standards that apply under each rule may be different in some instances, the court does not believe the distinction is particularly meaningful in this case.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).   The court is required to "accept all factual allegations [in the complaint] as true" and to "construe all inferences from those allegations in favor of the plaintiff." *Kravitz v. Summersett (In re Great Lakes Comnet, Inc.)*, 588 B.R. 1, 10 (Bankr. W.D. Mich. 2018) (citing *Gavitt v. Born*, 835 F.3d 623, 639-40 (6th Cir. 2016)).

The standard that applies to motions to dismiss under Rule 12(b)(1) varies depending on the type of jurisdictional "attack" raised.   A "facial attack" on the court's jurisdiction under Rule 12(b)(1), which challenges "the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. v. Senju Pharmaceutical Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (when reviewing a facial attack, "a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss").   By contrast, when a 12(b)(1) motion presents a "factual attack" on the court's jurisdiction, no presumption applies to the truthfulness of the factual allegations

11

in the complaint and the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist."  *Ohio Nat'l Life Ins*., 922 F.2d at 325.  GRE has characterized the arguments raised in the current motions to dismiss as facial attacks on jurisdiction and standing, and the Movants have not asserted otherwise.  The court also agrees that the motions present facial challenges to GRE's standing and this court's subject matter jurisdiction.

Accordingly, regardless of whether the motions are construed under Rule 12(b)(1) or 12(b)(6), the court will view the factual allegations in GRE's complaints as true and will determine whether those facts are sufficient to plausibly allege that GRE has standing to bring the claims it has asserted in the adversary complaints.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007) (to survive a motion to dismiss, the complaint must allege sufficient "facts to state a claim to relief that is plausible on its face"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).

2.   *GRE's Standing to Bring the Pre-Sale Transfer Claims*.

GRE and the Individuals have a long history of contentious litigation, and rarely seem to be on the same wavelength when it comes to the relevant facts and legal issues. To characterize the existing litigation in this court as "heated" would be an understatement – whether considering the instant adversary proceedings, the pending nondischargeability proceedings brought by GRE against the Individuals, or the prior fight over whether the Individuals' personal and privileged email communications had been sold to GRE under the Sale Order.  The standing issues raised in the motions to dismiss are no exception.

12

The Movants assert that because the causes of action alleged by GRE in the adversary proceedings are based on prepetition (or at least postpetition, pre-sale) activity, they actually belong to the Ahlan chapter 7 estate and may only be pursued by the Ahlan Trustee.  These arguments are based on well-established law.   Upon the filing of the Ahlan chapter 7 case, an estate was created that included "all legal or equitable interests of the debtor in property as of the commencement of the case."[8]  11 U.S.C. § 541(a)(1). This includes any causes of action belonging to the debtor.  *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 853 (6th Cir. 2002).  Under § 704(a)(1), one of the duties of the chapter 7 trustee is to "collect and reduce to money the property of the estate."   11 U.S.C. § 704(a)(1).   "Because causes of action belong to the estate," § 704(a)(1) "grants the trustee the exclusive right to assert the debtor's claims."  *In re Cannon*, 277 F.3d at 853 (citing *Honigman v. Comerica Bank (In re Van Dresser Corp.)*, 128 F.3d 945, 947 (6th Cir. 1997)).  By contrast, "[i]f a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action."  *Id*. Even so, to the extent recovery by the debtor's estate or a creditor on the cause of action could "preclude the other from a subsequent recovery," the claims will not be considered "truly independent" and will belong entirely to the bankruptcy estate.  *In re Nicole Gas Prod., Ltd*., 916 F.3d 566, 573 (6th Cir. 2019) (quoting *In re Van Dresser*, 128 F.3d at 947-48) (internal quotation marks and alterations omitted).

"In addition to a debtor's prepetition causes of action under applicable non-bankruptcy law, a trustee has the exclusive right to assert causes of action that arise under the Bankruptcy Code, including chapter 5 avoidance actions."  *In re Spiech Farms,*

---

[8]      This provision is subject to some limited exceptions which are not applicable here.

*LLC*, 603 B.R. 395, 401 (Bankr. W.D. Mich. 2019) (citing *Brennan v. Sloan (In re Fisher)*, 296 F. App'x 494, 504 (6th Cir. 2008)).   Any property recovered through use of the trustee's avoidance powers also becomes property of the estate.   *Id.* (citing 11 U.S.C. § 541(a)(3) & (6); *In re Fisher*, 296 F. App'x at 505).

To the extent this court concludes that the Pizzeria assets were at one time owned by Ahlan, but were ultimately not included in the sale to GRE, GRE's complaints allege that is because those assets were fraudulently transferred or converted from Ahlan to Mitten Pizza "at or around the time" that Ahlan's bankruptcy petition was filed.   If that transfer occurred prepetition, any causes of action to recover that transfer became property of the Ahlan bankruptcy estate as of the petition date.   Thereafter, the Ahlan Trustee was the appropriate party to pursue avoidance and recovery of that transfer.   This is true notwithstanding the fact that GRE, as a creditor of Ahlan, may have had the right to pursue the state law fraudulent transfer claims on its own behalf prior to the filing of the chapter 7 case.   The filing of the bankruptcy case "cut off" GRE's right to "proceed on its own" and gave the Ahlan Trustee the "exclusive authority to recover and distribute all assets that are the property of the bankrupt debtor's estate."   *CH Holding Co. v. Miller Parking Co.*, 973 F.Supp.2d 733, 737-38 (E.D. Mich. 2013).   If the transfer occurred postpetition, the Pizzeria assets became property of the estate as of the filing date.   To the extent those assets were then transferred or converted after the filing of the bankruptcy petition but prior to entry of the Sale Order,[9] the Ahlan Trustee would be the proper party to seek avoidance and recovery of those transfers.

---

[9]      As previously noted, the analysis might be different if the transfer of the Pizzeria assets occurred after the Ahlan assets were sold to GRE.   In that instance, GRE would likely have standing to bring a claim for conversion of the assets, and the dispositive question would become whether this court has jurisdiction over that claim.   Those issues need not be addressed here

These conclusions are bolstered by the fact that the Sale Order specifically excluded "any claims" relating to the "fraudulent transfer" of Ahlan's assets. Certainly, the inclusion of this language in the Sale Order indicates that any claims for transfer of the assets under the Michigan UFTA were specifically considered during the sale process and expressly excluded from the sale. Although the Sale Order does not specifically reference conversion or conspiracy claims in the paragraph excluding assets from the sale, those causes of action were also not expressly included in the sale.[10] The causes of action belonged to the estate, and absent some court-approved action by the Ahlan Trustee to part with those causes of action, he remains the party with standing to pursue them. Indeed, the Ahlan Trustee has done just that by actively pursuing other claims for preferences and unauthorized postpetition transfers on behalf of the estate since entry of the Sale Order.

In response to the motions to dismiss, GRE raises three main arguments, none of which alter the conclusion that GRE lacks standing to bring the claims asserted in the Mitten Pizza adversaries. First, GRE devotes significant attention to defending its Article III standing to bring the claims. Article III § 2 of the Constitution limits the federal courts to hearing only actual "cases and controversies." *See* U.S. Const., art. III, § 2; *Lujan v.*

because, although the allegations in the amended complaints about the timing of the alleged transfer are extremely vague, there are no facts alleged that would support a conclusion that the Pizzeria assets were transferred or converted after entry of the Sale Order. *See, e.g., In re Spiech Farms*, 603 B.R. at 405-06 & n.15 (limiting court's review to causes of action as they were actually pled in the complaint; plaintiffs are "masters of the complaint" and "have only themselves to blame for any shortcomings") (citation omitted).

10      Another judge of this court has previously held that chapter 5 rights are "powers" held by the trustee and not "property of the estate" which is subject to being sold under 11 U.S.C. § 363(b). *See In re Parirokh*, Case No. DG 11-05409 (Bankr. W.D. Mich. May 2, 2013) (Dales, C.J.) (unpublished memorandum order). Because GRE has not argued that it purchased any causes of action under the Sale Order, the proper characterization of chapter 5 causes of action need not be addressed here.

15

*Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992).  To establish Article III standing, a plaintiff must allege "three well-known ingredients" that collectively form the "irreducible constitutional minimum of standing":  that it has "suffered an injury; that the injury traces to the defendant's actions; and that a ruling for the plaintiff would likely redress this injury."  *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021) (citing *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016)); *Lujan*, 504 U.S. at 560.  GRE asserts that the factual allegations in its complaints meet this standard.

However, the Movants' argument that GRE lacks standing to bring the claims at issue here is not entirely an Article III question, but also raises concerns that have, at least historically, been characterized as issues of prudential standing.[11]  *See generally Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197 (1975) (the standing "inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise").  Prudential standing has previously been described as encompassing several related concepts including "the general prohibition on a litigant's raising another person's legal rights," and "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12, 124 S. Ct. 2301 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct.

---

[11]  Some courts, including the Sixth Circuit, have suggested that the type of question raised here – whether GRE is the proper plaintiff to assert these claims – is best analyzed as a "real party in interest" defense.  This defense is essentially codified in Fed. R. Civ P. 17(a), which provides that "[a]n action must be prosecuted in the name of the real party in interest."  *See* Fed. R. Bankr. P. 7017 (making Rule 17 applicable in adversary proceedings).  The real party in interest "is the person who is entitled to enforce the right asserted under the governing substantive law."  *Cranpark, Inc. v. Rogers Group, Inc.*, 821 F.3d 723, 730 (6th Cir. 2016).  The court need not address this defense in this case, as the Movants have not raised Rule 17 in their motions to dismiss.  Even if the real party in interest test is relevant here, it would not alter the court's analysis or conclusion.  *See, e.g.*, *Williams v. City of Detroit*, 2019 WL 2410719, *4 (E.D. Mich. June 7, 2019) (explaining that the Sixth Circuit case law is clear that "the real-party-in-interest analysis does not implicate Article III") (citing *Cranpark*, 821 F.3d at 731-32) (additional citations omitted).

3315 (1984)).   Both of these concerns are implicated in the arguments raised by the

Movants.   Although the United States Supreme Court has recently suggested that

including some of these concepts under the prudential standing rubric may be "inapt," this

court need not address those complex issues in this case. *Lexmark Int'l, Inc. v. Static

Control Components, Inc.*, 572 U.S. 118, 127 & n.3, 134 S. Ct. 1377 (2014).[12]  Here, it is

sufficient to note that GRE's assertions that it has generally suffered an injury traceable

to the Movants' actions for purposes of Article III standing are not responsive to the issue

raised in the motions to dismiss, which is that the Ahlan Trustee is the appropriate party

to pursue the Pre-Sale Transfer claims.[13]

Second, GRE argues that it informally obtained derivative standing from the Ahlan

Trustee to pursue the adversary claims or that such derivative standing can be obtained

retroactively.   Again, these arguments are not persuasive.   Caselaw from the Sixth Circuit

clearly permits the court to grant a creditor derivative standing to pursue causes of action

---

[12]      In *Lexmark*, the Court held that classifying the "zone of interest" analysis as an aspect of prudential standing is a "misnomer."  *Id*. at 127.   Instead this question, which asks whether a particular person has a right to sue under a particular statute, is a "merits issue that does not implicate a court's constitutional power to decide the case."  *Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019) (citing *Lexmark*, 572 U.S. at 128 n.4).  *Lexmark* noted that another consideration often labelled as a component of prudential standing, the bar on generalized grievances, was also frequently mischaracterized, as it barred claims "for constitutional reasons, not 'prudential' ones." *Lexmark*, 572 U.S. at 127 n.3.  The Court specifically declined to determine which category third-party standing issues, i.e., the bar on asserting rights belonging to another party, fell into, noting that such claims are "harder to classify" and that their "proper place in the standing firmament" could "await another day."  *Id*.

[13]      The accurate characterization of traditional prudential concepts also has potential implications for the legal standard that applies.   For instance, to the extent "zone of interest" arguments raise merits issues, motions to dismiss on that basis should presumably be evaluated under Rule 12(b)(6), while motions alleging violations of the bar on generalized grievances likely fall under Rule 12(b)(1).  *See, e.g., Adson5th, Inc. v. Bluefin Media, Inc.*, 2017 WL 2984552, *5-6 (W.D.N.Y. July 13, 2017).  As previously noted, this distinction is not material in this case as the applicable legal standard is substantially similar under either Rule 12(b)(1) or (6).

17

on behalf of the bankruptcy estate in chapter 7 cases.  *In re Trailer Source, Inc.*, 555 F.3d

231, 245 (6th Cir. 2009).  The cases are equally clear, however, that derivative standing

cannot be obtained based solely on the trustee's consent.  *See, e.g., In re Full Spectrum*

*Management, LLC*, 621 B.R. 421 (Bankr. W.D. Mich. 2020) (analyzing request for

derivative standing, notwithstanding trustee's consent).  Instead, the creditor must obtain

court approval of its request by establishing four factors that make the grant of derivative

standing appropriate.  *See Canadian Pacific Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re*

*The Gibson Group, Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995) (holding that derivative

standing may be granted when the creditor shows (1) that a demand was made on the

trustee, (2) the demand was declined, (3) a colorable claim that would benefit the estate

exist, and (4) the trustee's failure to act was unjustified under the circumstances).  GRE

has not sought court approval of any alleged derivative standing agreement with the

Ahlan Trustee and has made only a meager attempt to show that the *Gibson Group*

factors have been established in these cases.[14]  Further, although GRE correctly argues

that the Sixth Circuit has held that derivative standing may be granted retroactively (i.e.,

after the filing of the adversary complaint) in some instances, GRE has also failed to seek

any such relief from this court.  *See, e.g., Isaacs v. DBI-ASG Coinvestor Fund III, LLC* (*In*

*re Isaacs)*, 895 F.3d 904, 916 (6th Cir. 2018) (declining to "adopt a rigid rule that a plaintiff

---

[14]      In GRE's response to the motions to dismiss, it attached a January 20, 2020, letter from GRE's counsel to the Ahlan Trustee's counsel identifying certain claims and demanding that the Trustee take action to pursue § 548 fraudulent transfer and § 549 postpetition transfer claims against Mitten Pizza.  If the Trustee failed to do so, the letter indicated that GRE "would petition the court to compel the Trustee to take action" or alternatively, would ask the court to allow GRE to pursue the claims "in its own name."  (AP No. 20-80136, Dkt. No. 9, at Exh. 9.)  To the extent it is appropriate to consider this letter in the context of the current motions to dismiss, it suggests that GRE made a demand on the Ahlan Trustee.  However, other than the letter and the court's knowledge from review of its own dockets that certain claims have been pursued by the Trustee, the record is entirely silent as to the balance of the *Gibson Group* factors.

must obtain derivative standing before filing an adversary complaint" as being "inconsistent with the equitable nature of derivative standing").  The court declines to base its ruling on the motions to dismiss on a retroactive request that has yet to be made.[15]

Finally, GRE argues that it has standing to bring the fraudulent transfer, conversion and conspiracy claims because the harm that resulted from the transfer of the Pizzeria assets was not a generalized harm to all the creditors of the Ahlan estate, but was specific to GRE as the creditor who ultimately purchased the Ahlan assets.  In making this argument, GRE unsuccessfully attempts to distinguish *Spiech Farms*, which persuasively analyzed similar issues involving an individual creditor's right to assert causes of action that belonged to the debtor's bankruptcy estate.  *Spiech Farms* explained that causes of action for fraudulent transfers and other claims for wrongful diversion of a debtor's assets typically belong to the estate.  *In re Spiech Farms*, 603 B.R. at 403 (citations omitted). Such claims are considered general to the estate because they are not "tied to the harm done to the creditor by the debtor, by rather are based on an injury to the debtor's estate that creates a secondary harm to all creditors regardless of the nature of their underlying claim against the debtor."  *Id*. (quoting *Tronox, Inc. v. Kerr-McGee Corp. (In re Tronox, Inc.)*, 855 F.3d 84, 103-04 (2d Cir. 2017)).   Here, GRE's fraudulent transfer, conversion, and conspiracy causes of action are specifically premised on its alternative argument that the Pizzeria assets were not included in the sale to GRE because they were transferred by Ahlan prior to entry of the Sale Order; GRE did not own the assets or have a right to possess them when they were transferred.  The harm that resulted from this transfer was

---

[15]   To the extent GRE argues that the Trustee's Motion for Approval to Tender LLC Interests constitutes a request for derivative standing, the court disagrees.  Although the court has not yet ruled on the Trustee's motion, the motion does not use the term "derivative standing" and does not address the *Gibson Group* factors.

not specific to GRE in its capacity as a creditor – it was general to all creditors of the Ahlan bankruptcy estate.  The fact that GRE later purchased the assets of the estate does not alter that conclusion.

In summary, even when all facts and related inferences are construed in GRE's favor, the court concludes that GRE has failed to establish that it has standing to bring the Pre-Sale Transfer Claims against Mitten Pizza and the Individuals.

B. *The Motions for Sanctions*.

In addition to the motions to dismiss, the Individuals have filed separate motions seeking sanctions against GRE and its counsel pursuant to Fed. R. Bankr. P. 9011(b).[16] That Rule provides, in pertinent part:

(b) **Representations to the Court**.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

Fed. R. Bankr. P. 9011(b)(1) & (2).  The Individuals allege that GRE and its counsel violated both of these provisions by: (1) failing to make a reasonable inquiry into whether

---

[16]    Although not cited in the motions for sanctions themselves, the Individuals' briefs in support of their motions argue that sanctions are also appropriate under 28 U.S.C. § 1927 (permitting sanctions against individual attorneys who "unreasonably and vexatiously" multiply proceedings in any case).  Regardless of whether this request was properly raised, the court declines to impose sanctions under § 1927 for the same reasons stated in its Rule 9011(b) analysis.

20

the claims asserted against the Individuals were supported by existing law, and (2) bringing the claims for the purpose of harassing the Individuals and driving up their legal fees in a way that they, as chapter 13 Debtors, cannot afford.[17]

The test for determining whether to impose Rule 9011 sanctions is "whether the individual's conduct was reasonable under the circumstances." *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 711 (6th Cir. 1999).  The inquiry is not undertaken with "the benefit of hindsight," but instead should focus on what was reasonable for the signor to believe "at the time the [filing] was submitted." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 481 (6th Cir. 1996) (citation and alterations omitted).  If a court determines that a party or its attorney has violated Rule 9011, it may impose appropriate sanctions.  *See* Fed. R. Bankr. P. 9011(c).  The court has "wide discretion in selecting the appropriate sanction" but should choose the "least severe sanction which is likely to deter" repetition of the conduct.  *In re Lamar Crossing Apts., L.P.*, 464 B.R. 61, 2011 WL 6155714, *8 (6th Cir. B.A.P. Sept. 20, 2011) (unpublished table decision) (citations omitted).

Although the court agrees with the Individuals that the claims asserted by GRE are on shaky legal ground in many respects, the court does not find that the claims rise to the level of violating Rule 9011(b). First, the court cannot conclude that the adversary proceedings were filed for purposes of harassing the Individuals, causing unnecessary delay, or "driving up" litigation costs.  As previously noted, there is a history of contested litigation between these parties, in this court as well as in the state court.  The litigation is

---

[17]    In their motions, the Individuals state that they complied with the 21-day safe harbor requirement of Rule 9011(c)(1)(A) by serving GRE and its counsel with copies of the sanctions motions and supporting briefs in November 2020.  The court has accepted that representation for purposes of this opinion.

complex and necessarily will result in significant legal fees on both sides.  Frankly, had the court determined the conduct was sanctionable, an evidentiary hearing would likely be required to determine an appropriate sanction or monetary award; that, in and of itself, would drive up costs for both sides.  And, if anything, that would increase the temperature of this heated litigation, not bring it down.

The court likewise cannot conclude that the adversary complaints were unreasonable because they were not warranted by existing law. The facts alleged in the complaints describe conduct by the Individuals which, if true, is certainly offensive. Arguably, the adversary proceedings were filed to preserve the § 546 statute of limitations, which is understandable.  The court is familiar with the individual attorneys representing GRE and their law firm and is not aware of any past instances of similar alleged improper conduct by either counsel or the law firm.

However, the court remains perplexed and troubled by how these claims were brought before the court.  GRE claims that the Ahlan Trustee agreed to grant GRE derivative standing to pursue the causes of action before the adversary complaints were filed.  The record, however, is devoid of evidence of any such agreement.  Neither GRE nor the Ahlan Trustee sought this court's approval of such an agreement, and GRE did not independently seek a grant of derivative standing from this court irrespective of the Ahlan Trustee's agreement.  Similarly, GRE did not seek an abandonment of the claims from the Ahlan estate which, if coupled with relief from stay, might allow GRE to pursue its state law-created rights outside of bankruptcy.  At least one count of the amended complaints against the Individuals, the count alleging statutory conversion of assets purchased by GRE (Count IV), requests a damage award against the Individuals, who

are both currently Debtors in confirmed Chapter 13 bankruptcy cases.  This damage request was made without first seeking relief from the automatic stay (which GRE only sought after the filing of the adversary complaints) and generally reflected little consideration for how the claims would overlap with the on-going chapter 13 cases, including whether the claims arose pre- or post-petition and whether the claims might be dischargeable.  Suffice it to say that although the court has determined that sanctions are not appropriate in this instance, GRE and its counsel should be aware that their conduct here came right up to a line and nearly crossed it.  They should be careful not to tread so close to that mark in the future.

## IV.    CONCLUSION.

GRE has asserted the Pre-Sale Transfer claims in the three Mitten Pizza adversary proceedings in its individual capacity as a creditor of the Ahlan bankruptcy estate and as the eventual purchaser of the Ahlan assets.  For the reasons discussed herein, the court concludes that GRE does not have standing to bring the Pre-Sale Transfer claims in that capacity.  According, all counts of GRE's amended complaint against Mitten Pizza and Ahlan Industries (AP No. 20-80136), except for Count I which seeks a declaratory judgment that the Pizzeria assets were included under the Sale Order, shall be dismissed under Rules 12(b)(1) and (6).  GRE's amended complaints against the Individuals (AP Nos. 20-80137 & 20-80138) shall be dismissed in their entirety under Rules 12(b)(1) and (6).  The dismissal of the counts, all of which assert causes of action that belong to the Ahlan estate, shall be with prejudice to the refiling of the claims by GRE in its individual capacity.  The Individuals' motions for sanctions will also be denied.  Separate orders shall be entered accordingly.

**IT IS SO ORDERED.**

**Dated May 25, 2021**

James W. Boyd
United States Bankruptcy Judge